Brook B. Bond, ISB No. 6340
Jamie K. Ellsworth, ISB No. 8372
PARSONS BEHLE & LATIMER
960 Broadway Avenue, Suite 250
Boise, Idaho 83706
Telephone:  (208) 562-4900
Facsimile:  (208) 562-4901
Email:  bbond@parsonsbehle.com
        jellsworth@parsonsbehle.com

David A. Gauntlett (Cal. Bar No. 96399) (*pro hac vice* pending)
Andrew M. Sussman (Cal. Bar No. 112418) (*pro hac vice* pending)
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone:  (949) 553-1010
Facsimile:  (949) 553-2050
Email:  info@gauntlettlaw.com
        ams@gauntlettlaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EMPIRE AIRLINES, INC., an Idaho corporation, | |
| Plaintiff, | Case No. 1:12-CV-459 |
| v. | COMPLAINT FOR BREACH OF CONTRACT |
| HARTFORD FIRE INSURANCE COMPANY, a Connecticut corporation, | |
| Defendant. | |

Plaintiff Empire Airlines, Inc. ("Empire") alleges:

COMPLAINT FOR BREACH OF CONTRACT - 1

## THE PARTIES

1.     Plaintiff Empire is an Idaho corporation with its principal offices and headquarters in Hayden, Idaho. Empire is a citizen of Idaho.

2.     Defendant Hartford Fire Insurance Company ("Hartford") is a Connecticut corporation with its principal offices and headquarters in Connecticut. Hartford is a citizen of Connecticut. Hartford is licensed to sell insurance in Idaho.

## JURISDICTION

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Empire and Hartford and more than $75,000 is in controversy in this action.

## VENUE AND APPLICABLE LAW

4.     Venue is proper in the United States District Court, District of Idaho, pursuant to 28 U.S.C. §§ 1391(a) and 1391(c). Hartford sold and issued an insurance policy to Empire in this district. Empire's headquarters are in this district. The acts triggering coverage under the insurance policy Hartford issued to Empire occurred in this district.

5.     The District of Idaho is the place of performance under the insurance policy that Hartford issued to Empire, and Idaho law governs Hartford's obligations thereunder to Empire.

## HARTFORD'S POLICY

6.     Hartford issued to Empire a "CrimeSHIELD Policy for Mercantile Entities," Policy No. 52 BDD CX6258 (the "Policy") to named insureds Empire Airlines, Inc.; Empire Airlines, Inc. 401 K Profit Sharing Plan; and Reliant Logistics, LLC. A copy of the Policy is attached as **Exhibit "1."**

7.     The Policy term is "from October 1, 2004 until cancelled." As of 2009 the Policy was not "cancelled."

COMPLAINT FOR BREACH OF CONTRACT - 2

8.     The Policy provides up to $250,000 of "Computer and Funds Transfer Fraud" coverage, subject to a $1,000 deductible.

9.     The Policy's coverage provision states in part:

**I.     CONSIDERATION CLAUSE**

In exchange for the payment of premium and subject to the Declarations, Insuring Agreements, Exclusions, General Conditions, Definitions and terms of this Policy, we will pay for loss which you sustain resulting directly from acts committed or events occurring at any time and discovered by you during the Policy Period shown in the Declarations or during the period of time provided in General Condition L., EXTENDED

PERIOD TO DISCOVER LOSS.

* * *

**E.     INSURING AGREEMENT 5. - COMPUTER AND FUNDS TRANSFER FRAUD**

We will pay for loss of and loss from damage to "money", "securities" and "other property" following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises"

1.     to a person (other than a "messenger") outside those "premises"; or


2.     to a place outside those "premises."

* * *

10.    The Policy's exclusions state in part:

**This Policy Does Not Apply To And We Will Not Pay For:**

* * *

**C.     Acts of Employees, Managers, Directors, Trustees or Representatives**

Loss resulting from 'theft' or any other dishonest or criminal act committed by any of your 'employees', managers, directors, trustees or representatives whether acting alone or in collusion

COMPLAINT FOR BREACH OF CONTRACT - 3

with other persons or while performing services for you or otherwise except when covered under Insuring Agreement 1.

\* \* \*

**R.     Voluntary Parting of Title To or Possession of Property**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

\* \* \*

11.     The Policy includes a "Policy Change Endorsement" which states in part:

**EXCLUSION R., Voluntary Parting of Title To or Possession of Property**, applies solely to

a.     INSURING AGREEMENT 3., THEFT, DISAPPEARANCE AND DESTRUCTION – *Money, Securities and Other Property,*

b.     INSURING AGREEMENT 4., ROBBERY AND SAFE BURGLARY – *Money and Securities* and

c.     INSURING AGREEMENT 6., MONEY ORDERS AND COUNTERFEIT CURRENCY.

\* \* \*

12.     The Policy's definitions state in part:

A.     *"Banking premises"* means the interior portion of that part of any building occupied by a banking institution or similar safe depository.

\* \* \*

D.     "Employee" means

1. any natural person

a. while in your service or for 60 days after termination of service; and

b. who you compensate directly by salary, wages, commissions; and

COMPLAINT FOR BREACH OF CONTRACT - 4

c. who you have the right to direct and control while performing services for you; including one

d. who is performing services for you as the chairman, or a member of any committee and whether compensated or not; or

e. who is a director or trustee while acting as a member of any of your elected or appointed committees to perform on your behalf, specific, as distinguished from general directorial acts; or

f. who is a non-compensated officer; or

g. who is a volunteer who is not compensated, other than one who is a fund solicitor, while performing services for you that are usual to the duties of an "employee"; or

h. who is a former employee, director, partner, member, representative or trustee retained as a consultant while performing services for you; or

i. who is a student intern or guest student pursuing studies or duties in any of your offices or "premises"; and

j. who is your partner or member (of limited liability corporations), but we will not pay for loss caused by any partner or member, unless the amount of the loss exceeds the sum of

(1) any amounts you owe that partner or member; and

(2) the value of that partner's partnership interest, or that member's ownership interest determined by the closing of your organization's books on the date of discovery of the loss by your organization by anyone not in collusion with the person causing the loss, and

(3) any applicable Deductible Amount; then we will pay the amount of loss excess of that sum, up to the Limit of Insurance applicable to Insuring Agreement 1.

2. a natural person who is a trustee, officer, "employee", administrator or manager, except an administrator or a manager who is an independent contractor, of any "employee benefit Plan(s)" insured under this Policy; and your director or trustee while that person is handling "funds" or "other property" of "employee benefit Plan(s)" insured under this Policy.

3. a natural person who is furnished temporarily to you to substitute for a permanent "employee" to meet seasonal or short term work load conditions and while that temporary person is

subject to your direction and control and performing services for you. However, such persons are excluded while having care and custody of property outside the "premises"; and

a. "employee" does NOT mean (1) any agent, broker, person leased to you by a labor leasing firm, factor, commission merchant, consignee, independent contractor or representative of the same general character; or (2) any manager, director, partner, member or trustee except while performing acts coming within the scope of the usual duties of an "employee"

* * *

K.      *"Money"* means currency, coins and bank notes in current use and having a face value; and travelers checks, register checks and money orders held for sale to the general public.

* * *

N.      *"Premises"* means the interior of that portion of any building which you occupy in conducting your business.

* * *

13.     The Policy does not define "representative."

## EMPIRE'S LOSS OF PAYROLL TAX FUNDS

14.     Prior to November 11, 2008 Empire negotiated with Payroll for Payroll to provide payroll processing services to Empire.  Payroll represented that its services would include the calculation of Empire's periodic payroll tax and related liabilities, obtaining Empire's funds and then using them to pay those liabilities.  Payroll further represented that it lacked direct access to "ACH" (a regulated interbank transfer system required to make payroll tax payments) but that Payroll used Data Processing Services of Georgia, Inc. ("DPS") which, Payroll represented, had such access through its account with Greater Rome Bank ("Bank") to make such payments.

15.     On or about November 12, 2008, Empire contracted with Payroll to provide the above-referenced payroll tax services for Empire.  On the same date Empire executed a one-page

written "Price Proposal" provided by Payroll and setting forth Payroll's services and charges. A copy of the executed "Price Proposal" is attached as **Exhibit "2."**

16.     Payroll also provided to Empire a written form contract which was to specify Payroll's authorized activities on empire's behalf.  However, Empire never signed the document and Payroll never insisted or required that Empire sign it.

17.     Payroll provided Empire with "Millennium 3" ("MS") computer software, which Empire used at Payroll's direction to (1) determine Empire's monthly payroll needs (including payroll taxes owed); then (2) forward a report to Payroll of those needs and obligations and the required allocation of Empire's funds.  Payroll then would use its computer to impound the required amount of Empire's electronic funds from Empire's bank account for payment of Empire's obligations, including to payroll tax authorities.  Payroll was able to do this because at Payroll's request, Empire had given Payroll its bank routing number and account number.

18.     On February 18, 2009, Payroll acquired $455,440.43 of Empire's electronic funds for payroll-related purposes (including for paying payroll taxes), using its computer and Empire's banking numbers.

19.     On March 17, 2009, Payroll obtained an additional $453,952.49 of Empire funds for payroll-related purposes (including for paying payroll taxes) by instructing Empire to initiate an electronic funds transfer from its bank to Payroll's bank.  These funds were obtained in this manner based on Payroll's representations that DPS required them to be provided in this manner for more rapid availability and application.

20.     By letter dated July 27, 2009, the United States Internal Revenue Service ("IRS") informed Empire that $223,712.19 that had been due for payroll taxes for February and March, 2009 had not been paid, and that with accrued penalties and interest the total amount then owed

COMPLAINT FOR BREACH OF CONTRACT - 7

to the IRS was $251,606.85. A copy of this letter is attached as **Exhibit "3"** (with references to Empire's taxpayer i.d. number redacted).

21.    On August 3 and 4, 2009, Payroll represented that (1) in February and March, 2009 Payroll obtained Empire's funds and transmitted the portions attributable to Empire's payroll taxes to DPS for remittance to the federal government; and (2) DPS subsequently represented to Payroll "that the [payroll tax] payments had been made" but, as of the e-mail's date, had not provided proof that, in fact, the payments were made. A copy of an email thread whereby Payroll made the representations is Exhibit "6" to **"Exhibit" 10"** (attached hereto).

22.    Payroll presently is a debtor in bankruptcy. Empire has submitted a Proof of Claim for amounts owed to the IRS in Payroll's bankruptcy case. Payroll has never repaid any of the funds obtained from Empire to Empire, nor has there been any distribution of funds from Payroll's bankruptcy estate to Empire.

23.    Empire's funds were not remitted to the IRS for payroll taxes due to misfeasance by Payroll, and/or by DPS, and/or by the Bank, and/or by some combination of them.

24.    Empire has sustained a loss of at least $251,606.85 in taxes, interest, and penalties, exceeding the Policy's $249,000 net limit for the Policy's "Computer and Funds Transfer Fraud" coverage.

### HARTFORD'S REFUSAL TO PAY POLICY BENEFITS

25.    On February 3, 2011, Empire submitted its Proof of Loss to Hartford, advising of its loss (which by then had increased to $314,554.93) and how it was incurred and requesting Empire's payment of the loss. A copy of the Proof of Loss (*sans* exhibits thereto) is attached as **Exhibit "4."** When Hartford asked for further information, Empire responded.

COMPLAINT FOR BREACH OF CONTRACT - 8

26.     By letter dated January 9, 2012, Hartford communicated its denial of Empire's Policy benefits.  A copy of the letter is attached as **Exhibit "5."**  Hartford denied benefits on the purported grounds that:

(1)     The facts known to Hartford did not trigger all elements of the torts of actual or constructive fraud by Payroll or DPS and, thus, the Policy's "fraudulently" coverage element; was not triggered;

(2)     The loss was not "directly related to the use of [a] computer;" and

(3)     Empire purportedly had "authorized" its funds to be transferred.

In its letter Hartford acknowledged that its "investigation" had consisted only of reviewing documents filed in connection with Payroll's bankruptcy estate's coverage lawsuit, including the deposition transcript of Wayne Davis (Payroll's former CEO, now under federal indictment for various payroll-service-related crimes).

27.     By letter dated March 15, 2012, Empire responded to Hartford's January 9, 2012 letter.  A copy of the letter is attached as **Exhibit "6."**  In it, Empire: (1) explained why Hartford was obligated to further investigate the true facts supporting coverage;  (2) provided voluminous additional facts concerning the relationships among Payroll, DPS and Bank (obtained from pleadings, motions, affidavits and exhibits filed in a Payroll bankruptcy adversary proceeding against DPS and the Bank); (3) explained how those facts triggered coverage under the Policy's "Insuring Agreement 5" and why no Policy exclusion barred coverage; and (4) explained why Hartford's continuing refusal to pay Policy benefits would entitle Empire to its attorneys' fees from Hartford in the event of coverage litigation.

28.     By letter dated April 16, 2012, Hartford responded to Empire's March 15, 2012 letter.  A copy of the letter is attached as **Exhibit "7."**  The letter asserted that Hartford's investigation was purportedly continuing and requested numerous additional facts from Empire.

COMPLAINT FOR BREACH OF CONTRACT - 9

29.     By letter dated April 27, 2012, Empire responded to Hartford's April 16, 2012 letter.  A copy of the letter is attached as **Exhibit "8."**  In it, Empire provided numerous additional facts to Hartford in response to Hartford's inquiries and reminded Hartford that its continuing failure to pay policy benefits within 30 days after Empire provided its "proof of loss" would require Hartford to pay Empire's litigation fees.

30.     By letter dated May 10, 2012, Hartford responded to Empire's April 27, 2012 letter. A copy of this letter is attached as **Exhibit "9."**  In it, Hartford again demanded additional facts and documents from Empire.

31.     By letter dated May 30, 2012, Empire responded to Hartford's May 10, 2012 letter. A copy of this letter is attached as **Exhibit "10."**  In the letter Empire (1) provided more facts and documents fully responsive to Hartford's prior letter; (2) again explained in detail why the Policy's coverage was triggered and no exclusion applied; and (3) again warned Hartford of the consequences of its continuing failure and refusal to timely pay Policy benefits.

32.     By letter dated July 2, 2012, Hartford responded to Empire's May 30, 2012 letter. A copy of this letter is attached as **Exhibit "11."**  In this letter Hartford again stated its refusal to pay benefits.  This time, however, Hartford did not specifically state that that there was no coverage under the relevant portion of the Policy's "Insuring Agreement 5" but, instead, reserved its purported rights to assert there was no coverage.  Hartford also contended that the Policy's Exclusion "C" (but not other exclusions) bars coverage:

> Specifically, even if the Claimed Loss falls within the scope of Insuring Agreements 3 and 5 in the Policy, Hartford concludes that Exclusion C [Acts of Employees, Manages, Directors, Trustees or Representatives] and Exclusion R [Voluntary Parting of Title to Possession of Property] **(which applies only to Insuring Agreements 3, 4 and 6)** would apply to exclude coverage for the Claimed Loss.

* * *

COMPLAINT FOR BREACH OF CONTRACT - 10

Exclusion R, pursuant to the Policy Change Endorsement to the Policy, **applies solely to Insuring Agreements 3, 4 and 6** ...

\* \* \*

## EMPIRE'S CLAIM FALLS WITHIN HARTFORD'S COVERAGE

33.     "Insuring Agreement 5" of Hartford's Policy provides coverage for: "loss of . . . 'money' and 'other property following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the court premises' to . . . place outside those 'premises.'"  As of July 2, 2011, Hartford no longer expressly denied that the coverage provided by the relevant portion of the Policy's "Insuring Agreement 5" is triggered by the facts made known to Hartford.

34.     Hartford has expressly implicitly acknowledged that all but one of the Policy's exclusions (Exclusion "C") does not apply to bar coverage.  Exclusion "C" is inapplicable because although it bars coverage for a "theft" or "dishonest act" by "'employees,' managers, directors, trustees or representatives" of Empire, Payroll does not fall within any of these categories.  That is because:

(1)     Payroll indisputably was not an "'employee,' manager, director or trustee" of Empire;

(2)     "Representative" can mean an agent working within Empire's business or subject to Empire's control, which Payroll was not; and

(3)     In the context of the exclusion "representative" can only mean a natural person, which Payroll is not.

35.     Nevertheless, Hartford continues to fail and refuses to pay Empire Policy benefits in any amount.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract against Hartford)

36.     Empire incorporates all of the above allegations by this reference.

37.     The Policy is an insurance contract, pursuant to which Hartford is obligated to pay for Empire's loss up to $249,000 (i.e., the Policy limit of $250,000, less a $1,000 deductible). This amount is met and owed because the amount of Empire's loss exceeds $250,000.

38.     Empire has demanded Hartford's payment of benefits owed under the Policy but Hartford refuses to pay them.

39.     Empire has performed all obligations and conditions that the Policy requires it to perform, or has been excused from performing them by Hartford's Policy breaches.

40.     All conditions required by the Policy or applicable law to trigger Hartford's duty to pay Empire's Policy benefits have been satisfied.

41.     Empire is entitled to an award of all damages that it has sustained as a result of Empire's breach of its Policy obligations, including consequential damages, and prejudgment interest as allowed by Idaho law.

42.     Hartford failed and refused to pay Empire's Policy benefits within 30 days after Empire provided its proof of loss, and continues to fail and refuse to pay them.  Accordingly, Empire is entitled under Idaho law to an award of all of its reasonable attorneys' fees incurred in connection with the litigation of this lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, Empire prays for:

1.     General damages in a sum certain according to proof and not less than $249,000;

2.     Prejudgment interest thereon at the legal rate until the date of entry of judgment herein;

3.     Attorneys' fees pursuant to I.C. § 41-1839;

4.     Costs of suit; and

COMPLAINT FOR BREACH OF CONTRACT - 12

5.      Such other and further relief as the Court may deem just.

DATED THIS 7th day of September, 2012.

PARSONS BEHLE & LATIMER

By */s/ Brook B. Bond*
    Brook B. Bond

GAUNTLETT & ASSOCIATES
    David A. Gauntlett
    Andrew M. Sussman

Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

DATED THIS 7th day of September, 2012.

PARSONS BEHLE & LATIMER

By */s/ Brook B. Bond*
    Brook B. Bond

GAUNTLETT & ASSOCIATES
    David A. Gauntlett
    Andrew M. Sussman

Attorneys for Plaintiff

COMPLAINT FOR BREACH OF CONTRACT - 13

## EXHIBITS TO COMPLAINT

**EXHIBIT 1**      Hartford "CrimeSHIELD Policy for Mercantile Entities" No. 52 BDD CX6258 issued to Empire

**EXHIBIT 2**      "Price Proposal" provided by Payroll

**EXHIBIT 3**      Letter from IRS to Empire dated July 27, 2009

**EXHIBIT 4**      Proof of Loss submitted by Empire to Hartford on February 3, 2011

**EXHIBIT 5**      Denial letter from Hartford to Empire dated January 9, 2012

**EXHIBIT 6**      Letter from Empire to Hartford dated March 15, 2012

**EXHIBIT 7**      Letter from Hartford to Empire dated April 16, 2012

**EXHIBIT 8**      Letter from Empire to Hartford dated April 27, 2012

**EXHIBIT 9**      Letter from Hartford to Empire dated May 10, 2012

**EXHIBIT 10**      Letter from Empire to Hartford dated May 30, 2012

**EXHIBIT 11**      Letter from Hartford to Empire dated July 2, 2012